IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

V.                                                                Case No. 15-CR-01142-KG

CLINT S. SKEEN,

    Defendant-Appellant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant's Appeal from the United States Magistrate Judgment District of New Mexico, filed May 11, 2015. (Doc. 7). The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that the appeal is not well taken and will be DENIED.

*I.     Background*

On April 7, 2014, Clint S. Skeen (Defendant) was cited for violation of 36 C.F.R. § 261.3(a) (Interfering with a Forest Officer). On June 16, 2014, Defendant appeared in court on Violation Number FBAS0020. On October 28, 2014, the United States filed a criminal information. On January 20, 2015, the United States filed a superseding information reflecting the correct violation number and modified language to properly track the language contained within the statute. The United States also filed a Motion in *Limine* to admit Rule 404(b) evidence as to Defendant. In its motion, the United States sought to introduce the following five prior acts against Defendant:

1. On a Saturday in late November or early December of 2012, Phillips pulled into the drive through lane at City Bank on 1850 Sudderth Drive in Ruidoso, New Mexico. While waiting in line, Phillips observed Defendant pull up next to Phillips' vehicle. Defendant pulled up close enough to Phillips vehicle that he hit Phillips' driver's side mirror with his own mirror. Defendant began cussing at

      Phillips and then took a photograph of Phillips before telling Phillips to meet Defendant at an unknown location to fight. Defendant then drove away.

2. In August or September of 2013, Phillips was at the workstation when he noticed Defendant's truck parked directly behind Phillips' truck in the workstation parking lot. Phillips exited the workstation and approached Defendant's truck. As he approached Defendant's truck, Defendant slowly drove out of the parking lot.

3. For several months after the March 25, 2014, incident on an almost daily basis and often multiple times a day, Defendant drove his truck past the workstation while revving his engine. As a result, Clemins, Swope, and Phillips observed Defendant driving the same truck that had passed them on March 25, 2014, on multiple occasions.

4. On August 15, 2014, at approximately 5:30 p.m., firefighter Swope was attempting to clean his truck at a carwash located at 1127 Mechem Drive in Ruidoso, New Mexico. Swope observed Defendant pull his truck up next to Swope and Swope's truck. Defendant then caused his truck to blow a cloud of black smoke onto Swope and Swope's truck. Defendant then proceeded to stare at Swope. Swope entered his truck and left the area.

5. On January 1, 2015, at approximately 11:30 a.m., Phillips was driving south on Nogal Avenue in Capitan, New Mexico, when he observed Defendant driving the same truck, turn left onto Nogal Avenue from West 3rd Street. Defendant then accelerated, driving down the center of the street placing himself on a collision course with Phillips. Defendant then swerved out of the way just before making contact with Phillips truck.

*See* U.S. Mot. in Lim. Regarding Rule 404(b) Evid. as to Clint S. Skeen 3–4. The United States argued that the 404(b) evidence was admissible to prove motive, intent, and the absence of mistake or accident on Defendant's part.

      The bench trial was originally scheduled on January 21, 2015. United States Magistrate Judge Lourdes A. Martinez, however, continued the trial and ordered the United States to submit a trial brief on the issues of strict liability and "official duty" as related to 36 C.F.R. § 261.3(a). The Court further ordered Defendant to file a pre-trial brief on his contention that he could not be found guilty of the criminal offense because, pursuant to New Mexico law, the forest officers were running on the wrong side of the road.

The Court heard Defendant's case on March 18, 2015, in a bench trial before United States Magistrate William P. Lynch. Prior to trial, the Court ruled that 36 C.F.R. § 261.3(a) was not a strict liability offense and, therefore, the United States was required to prove general intent. Trial Tr. 7. The Court further declined to rule on whether the forest officers were acting in their official capacity as a matter of law. *Id.* Finally, the Court found Defendant's prior acts were admissible "for things such as intent, motive, absence of mistake or lack of accident . . . ." *Id.*

Then, in Defendant's case-in-chief, Defendant attempted to call Sergeant John Giron (Sergeant Giron) as a witness. The United States requested an offer of proof, to which Defense Counsel responded that Sergeant Giron, a thirteen-year veteran of the Valencia County Sheriff's Department, "is familiar with all the traffic laws of New Mexico and their application in this case, particularly relating to the statute requiring pedestrians to be on the right-hand side of the road." *Id.* at 96. The Court excluded Sergeant Giron's testimony on the basis that the Court understood the relevant state law. *Id.*

At the conclusion of the one-day bench trial, the Court found Defendant guilty of violating 36 C.F.R. § 261.3(a). *Id.* at 135–36. Judgment was entered on April 3, 2015. (Doc. 1). The Court sentenced Defendant to pay a $225 fine as well as $25 in court costs. *Id.* Defendant's Notice of Appeal was timely filed on April 3, 2015.

II.   *Standard of Review*

"In all cases of conviction by a United States magistrate judge an appeal of right shall lie from the judgment of the magistrate judge to a judge of the district court of the district in which the offense was committed." 18 U.S.C. § 3402. Under Fed. R. Crim. P. 58(g)(2)(D), a defendant is not entitled to a trial *de novo* by the district judge. Instead, "the scope of appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge."

Fed. R. Crim. P. 58(g)(2)(D).  That is, a defendant is entitled to review of "the legal conclusions *de novo* and factual findings for clear error."  *United States v. Morrison*, 415 F.3d 1180, 1184 (10th Cir. 2005).  When reviewing the sufficiency of the evidence, the Court reviews "whether a reasonable jury could find the defendant guilty beyond a reasonable doubt, given the direct and circumstantial evidence, along with reasonable inferences therefrom, taken in a light most favorable to the government."  *United States v. DeChristopher*, 695 F.3d 1082, 1091 (10th Cir. 2012) (citing *United States v. Diaz*, 679 F.3d 1183, 1187 (10th Cir. 2012)).

*III.   Discussion*

Defendant appeals his conviction asserting:  (1) the United States failed to present sufficient evidence to prove the "threatening, resisting, intimidating, or interfering" element of 36 C.F.R. § 261.3(a); (2) the United States failed to present sufficient evidence to prove the "engaged in or on account of the performance of his official duties" element of 36 C.F.R. § 261.3(a); (3) the Court abused its discretion by improperly admitting evidence of Defendant's prior acts under Fed. R. Evid. 404(b); and (4) the Court abused its discretion by excluding the testimony of Sergeant Giron.  The United States contends, and the Court agrees, that Defendant also implicitly argues that 36 C.F.R. § 261.3(a) is unconstitutionally vague.

> A.   *The United States Presented Sufficient Evidence to Support a Finding that Defendant Threatened or Intimidated Pursuant to 36 C.F.R. § 261.3(a)[1]*

36 C.F.R. §261.3(a) prohibits "threatening, resisting, intimidating, or interfering with any forest officer engaged in or on account of the performance of his official duties in the protection, improvement, or administration of the National Forest . . . ."  The Federal Regulations do not define "threatening," "intimidating," or "interfering," nor has the Tenth Circuit addressed what constitutes as "threatening," "intimidating," or "interfering."  Without prior interpretation of the

---

[1]  Throughout the proceedings the United States has never contended that Defendant's conduct constituted resistance.  As such, the Court's analysis will not include the "resisting" element of 36 C.F.R. § 261.3(a).

4

regulation, this Court must apply the same rules it implements to interpret statutes. *Mitchell v. C.I.R.*, 775 F.3d 1243, 1249 (10th Cir. 2015) (internal citation omitted). The Court, thus, must first examine "the plain language of the text, giving each word its ordinary and customary meaning." *Id.* If the meaning of the regulation is clear, the Court's analysis ends and the regulation is enforced in accordance with its plain meaning. *Id.*

The evidence adduced at trial is as follows. On the morning of March 25, 2014, Assistant Captain Firefighter Matt Clemins (Clemins) led seasonal firefighters Harrison Phillips (Phillips) and Brandon Swope (Swope) on a four-mile run in Capitan, New Mexico. Trial Tr. 11, 13–15, 63–64, 114–15; *see also* Gov't Ex. 8, 9. Although all three-forest officers were on duty, none of the officers wore any kind of issued physical training uniform. Trial Tr. 14. The run began at the United States Forest Service Smokey Bear Workstation heading two miles south from the workstation along Tiger Drive. *Id.* at 15. At approximately mile two, Clemins instructed the officers to turn around and proceed along the same route north toward the workstation. *Id.* at 17. Clemins led the group, followed by Phillips and Swope in a single file. *Id.* at 16–17, 64. As the officers were running on the right hand side of Tiger Drive with their backs towards oncoming traffic, a white Dodge pick-up truck with black trim traveling faster than the 15 mile-per-hour posted speed limit, closely passed the officers and revved its engine spraying black diesel exhaust on the officers. *Id.* at 17–19, 64–65; *see also* Gov't Ex. 3. Specifically, the truck's right side mirror passed within a foot of Clemins' person, and within two feet or less of Phillips. Trial Tr. 19, 30, 65.

The truck continued north on Tiger Drive until it reached the intersection between Tiger Drive and Highway 380. *Id.* at 22. The truck then turned right on Highway 380 heading in the direction of the workstation. *Id.* None of the officers observed the driver of the truck. *Id.* at 20,

68–69, 117.  The officers continued the run back to the workstation.  *Id.* at 22.  After returning to the workstation, Clemins and Phillips observed Defendant in the same white pick-up truck driving west past the workstation on Highway 380.  *Id.* at 23–24, 77.

On direct-examination, Clemins described Tiger Drive as "narrow" with a fence and a curb located on both sides of the road.  *Id.* at 15–16.  He further testified that the incident occurred in a school zone on Tiger Drive where the road curves and slightly declines immediately preceding the middle school entrance.  *Id.* at 18.  Due to the condition of Tiger Drive, Clemins stated that drivers slow down and merge into the other lane in order to pass the forest officers when the officers are conducting physical training runs.  *Id.* at 16.  Clemins also testified that in his thirteen-year career of conducting physical training runs he had never been passed that closely by a vehicle or encountered that amount of black diesel exhaust.  *Id.* at 21–22.  In fact, Clemins stated on direct- and cross-examination that the proximity of the vehicle to his person caused him to be fearful that he may be struck by the vehicle.  *Id.* at 20, 23, 47.  And, during cross-examination Clemins specifically testified that he felt threatened by Defendant's actions.  *Id.* at 58.

Clemins also testified that Defendant's actions interfered with his duties as a forest officer in two ways.  First, immediately following the incident, Clemins took time away from his official duties to report the incident to his Captain and law enforcement.  *Id.* at 58–59.  Second, as a result of the incident the officers were required to relocate their physical training approximately "five to ten miles away" on federal land in order to avoid future interactions with Defendant.  *Id.* at 25, 60–61.

Next, Phillips testified that the truck—traveling at approximately 35-40 miles-per-hour in a 15 mile-per-hour zone—passed "within a foot to two" of Phillips' person, but was "probably

6

closer" to Clemins. *Id.* at 64–65. Phillips also testified that Defendant's actions made his heart "jump" and "startled" him because he thought the truck could hit him. *Id.* at 65. Phillips further testified that he felt threatened and intimidated. *Id.* at 65, 83–84. Last, Phillips testified that Defendant's actions impeded the run because Phillips had to slow down in order to remove his cell phone from his pocket and take a photo of the truck. *Id.* at 66; *see also* Gov't Ex. 4, 5, 8, 9.

      a. *Threatening*

Defendant first asserts that the record is void of any perceived "threat" because a "threat," generally, is spoken or written, not conveyed through action. Because 36 C.F.R. § 261.3(a) does not define the term "threatening," the Court construes the term in accord with its ordinary meaning which is "to utter threats against;" "to give signs or warning of: portend;" "to hang over dangerously;" "to announce as intended or possible;" "to cause to feel insecure or anxious." *Threaten*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1302 (11th ed. 2008).

In this case, viewing the evidence in a light most favorable to the United States, the evidence supports a finding by a reasonable jury that Defendant threatened the forest officers. Although Defendant did not verbally utter a threat at the officers, the evidence demonstrates that his actions caused Clemins and Phillips to "feel insecure or anxious." In particular, the officers testified that they felt threatened and startled by Defendant's actions—specifically the proximity of the truck to their persons. Moreover, Magistrate Judge Lynch found Clemins and Phillips credible. *Id.* at 134–36. And, this Court will not second guess the trial court's credibility assessments. *United States v. Avery*, 295 F.3d 1158, 1167 (10th Cir. 2002). Hence, there is sufficient evidence in the record to support a finding that Defendant "threatened" the forest officers as proscribed in 36 C.F.R. § 261.3(a).

      b. *Intimidating*

Defendant next claims that the United States failed to prove beyond a reasonable doubt that Defendant's actions constituted "intimidation" because the underlying conduct must be unlawful and, in this case, the only unlawful behavior was that of the forest officers by running on the wrong side of the road. In addition, the "intimidation" created by the proximity of the vehicle to the forest officers stems from the width of the road and the location of the runners, not by Defendant's conduct.

The Court first finds Defendant's contention that the officers are contributory negligent is without merit. Defendant has provided no authority for his assertion that contributory negligence applies in criminal law. Second, the Court finds that a reasonable fact-finder, viewing the evidence in the light most favorable to the United States, could conclude that Defendant "intimidated" the forest officers. The natural meaning of "intimate" is "to make timid or fearful: frighten." *Id.* at 656; *see also United States v. Hoff*, 22 F.3d 222, 223 (9th Cir. 1994) (defining "intimidated"—as used in 36 C.F.R. § 261.3(a)—to make someone "timid or fearful"). At trial, Clemins repeatedly testified that proximity of the truck—approximately one foot—caused him to be fearful that he may be struck by the truck if either Defendant or Clemins erred in their movements. Phillips also testified that he felt intimidated by Defendant's actions. In addition, there is sufficient evidence in the record to belie Defendant's contention that the road conditions created the close proximity between the truck and the officers. Clemins, a veteran officer, testified that he has never encountered a vehicle that close to his person while conducting a physical training run. Indeed, Clemins testified that the antithetical occurs: the driver slows down and merges into the opposing lane in order to safely pass the officers. Trial Tr. 16. Or, in the case of two-way traffic, the vehicles typically slow down and wait for oncoming traffic to pass before safely passing the officers. *Id.* Consequently, the Court finds that sufficient

evidence existed for the trial court to determine that Defendant "intimidated" the forest officers as prohibited by 36 C.F.R. § 261.3(a).

   c. *Interfering*

Finally, Defendant claims "interference" requires a nexus between some prior assertion of federal authority and a defendant's conduct. Defendant contends that the United States failed to present any evidence of the forest officers asserting their authority. In the alternative, Defendant argues that his conduct did not amount to interference because the forest officers testified that they completed the physical training run.

The Court finds the ordinary meaning of "interfere" is "to interpose in a way that hinders or impedes." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 652 (11th ed. 2008); *see also United States v. Willfong*, 274 F.3d 1297, 1301 (9th Cir. 2001) ("to 'interfere' is to 'oppose, intervene, hinder, or prevent'"). Moreover, the Court notes that the term "[i]nterfere has such a clear, specific, and well-known meaning as not to require more than the use of the word itself in a criminal statute." *Willfong*, 274 F.3d at 1301 (internal quotation and citation omitted).

In this case, as discussed *infra*, the United States presented sufficient evidence that the forest officers were conducting their official duties at the time of the incident. Nonetheless, the United States did not present sufficient evidence beyond a reasonable doubt that Defendant's actions hindered or impeded the officers from continuing and completing their physical training. Clemins and Phillips testified that they completed the run. Any purported interference occurred after the incident. And, the alleged interference was minimal. As such, the Court finds Defendant's actions created a disturbance, but did not rise to the level of interference as contemplated in 36 C.F.R. § 261.3(a). *See United States v. Sherer*, 2012 WL 1815598, at *4 (E.D. Cal May 17, 2012) ("[N]ot every response or action by the defendant which is not in

lockstep with orders of law enforcement rises to the level of interference.").

Accordingly, viewing the evidence in a light most favorable to the government, the Court finds a reasonable jury could determine Defendant threatened or intimidated the forest officers pursuant to 36 C.F.R. § 261.3(a) and, therefore, the United States presented sufficient evidence at trial.

> B. *The United States Presented Sufficient Evidence to Support a Finding that the Forest Officers Were Acting Within Their Official Duties Pursuant to 36 C.F.R. § 261.3(a)*

A forest officer is "an employee of the Forest Service." 36 C.F.R. § 261.2. "For purposes of 36 C.F.R. § 261.3(a), a forest officer is performing an 'official duty' when the officer is on duty and performing an act that contributes to the protection, improvement, or administration of the National Forest." *Willfong*, 274 F.3d at 1300. The Court may consider whether the officer "acted at the direction of his supervisor" or was on "a frolic of his own" to determine if the act contributes to the protection, improvement, or administration of the National Forest. *See United States v. Ryberg*, 43 F.3d 1332, 1334 (9th Cir. 1995). The Court is inclined to find the officer performed an "official duty" if the officer acted "in his official capacity at all material times." *Willfong*, 274 F.3d at 1300.

It is uncontroverted that Clemins, Phillips, and Swope were forest officers at the time of the incident as defined in 36 C.F.R. § 261.2. It is also undisputed that the forest officers were on duty at the time of the incident. Trial Tr. 12. Therefore, the question before the Court is whether the forest officers' physical training run constitutes as an "official duty."

Defendant first claims that "official duty" includes duties in which a forest officer could be "disciplined or terminated" for willful failure to perform such duty. (Doc. 7) at 27. Defendant's assertion is unsupported and, therefore, is without merit. Next, Defendant argues that the United States' interpretation of a mandatory run as an official duty is exceedingly broad

because it encompasses any potential peripheral activity. Defendant thus contends that "there must be a nexus between the allegedly offensive conduct and a clearly observed forest service activity." (Doc. 7) at 27. Defendant, again, cites no authority for his contention. As such, the Court finds the argument is meritless.

In this matter, viewing the evidence in the light most favorable to the United States, a reasonable fact-finder could conclude that the forest officers were performing an official duty at the time of the incident. First, under the specific circumstances presented in this case, a broad interpretation of the "protection, improvement, or administration of the National Forest" is proper. At trial, Clemins and Phillips testified that their daily duties include physical training in order to "stay physically fit for the demanding fire season." Trial Tr. 12; *see also id.* at 10–11, 14, 21, 37–38, 63. Clemins explained that a certain level of physical fitness is required for the officers to effectively and safely perform arduous and strenuous tasks during a forest fire. *Id.* at 36:7–14, 38:23–39:2, 39:5–12, 39:19–40:4. In fact, there are physical fitness standards the officers are required to maintain throughout the fire season. *Id.* at 39:8–12. As a result, the officers' physical training is germane to the officers' ability to protect the National Forest.

Second, the evidence adduced at trial demonstrates that the officers acted at the direction of their supervisor. Clemins testified that part of his job as Assistant Capitan involved scheduling the daily physical training sessions. *Id.* at 13. On the morning of the incident, Clemins—the supervisor—instructed Phillips and Swope that physical training would encompass a four- to six-mile run. *Id.* at 14, 64. Complying with a superior officer's command, Phillips and Swope participated in the physical training. Undoubtedly, the officers were not off on a frolic of their own. The officers were on duty, performing physical training, and acting in their official capacity at all material times.

Third, despite the fact that the officers were not dressed in identifiable physical training uniforms, there is sufficient evidence in the record for a reasonable jury to find that Defendant knew the runners were forest officers. Clemins testified that due to the small size of the Capitan community the forest officers are easily recognizable when conducting group physical training runs. *Id.* at 16. Moreover, there is sufficient evidence in the record that prior to the incident Defendant knew of the officers and their employment with the National Forest. *Id.* at 42, 54, 70–75.

Based on the foregoing, the Court finds that, under the circumstances in this case and viewing the evidence in the light most favorable to the government, the United States presented sufficient evidence to support a finding that the forest officers were performing an official duty at the time of the incident pursuant to 36 C.F.R. § 261.3(a).

  C.  *The Magistrate Judge Properly Admitted Rule 404(b) Evidence*

Defendant argues that the trial court abused its discretion in allowing the United States to introduce 404(b) evidence regarding Defendant's prior and subsequent interactions with the forest officers. Defendant contends that the 404(b) evidence was admitted purely to demonstrate Defendant's criminal propensity and, further, that the evidence is irrelevant.

On appeal, a trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion and is reversed "only if it is manifestly erroneous." *United Stated v. Hood*, 774 F.3d 638, 644 (10th Cir. 2014) (citation and quotation omitted). A trial court's decision will not be reversed when "its decision falls within the bounds of permissible choice in the circumstances and is not arbitrary, capricious or whimsical." *United States v. Davis*, 636 F.3d 1281, 1297 (10th Cir. 2011) (quotation omitted).

Under Rule 404(b), evidence of other acts may be admissible for purposes other than

proof a defendant's bad character or general propensity to commit a crime. The Rule provides, in relevant part,

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Fed. R. Evid. 404(b). The Court applies a four-factor test in weighing the admissibility of other acts evidence under Rule 404(b): (1) whether the evidence is offered for a proper purpose; (2) relevancy of the evidence; (3) that the probative value of the evidence is not substantially outweighed by its prejudicial effect; and (4) a limiting instruction is given to the jury if the defendant so requests. *See Huddleston v. United States*, 485 U.S. 681, 691 (1988).

Here, the first factor—proper purpose—is easily met. Magistrate Judge Lynch held that 36 C.F.R. § 261.3(a) was a general intent crime and, as such, the 404(b) evidence was admissible to prove "intent, motive, absence of mistake or lack of accident." Trial Tr. 7. In particular, the United States introduced the 404(b) evidence to prove Defendant's identity. At trial, Defendant challenged whether he was the driver of the truck because none of the officers identified Defendant at the time of the incident. The 404(b) evidence, however, established that the officers had witnessed Defendant driving the truck in question prior to and subsequent to the March 25, 2014, incident.

Moreover, the 404(b) evidence demonstrates Defendant's intent, motive, or lack of mistake to utilize his truck in an intimidating or threatening manner. For example, in late November or early December 2012, Defendant pulled his truck close enough to Phillips' vehicle that he hit Phillips' driver's side mirror. Following the March 25, 2014, incident, Defendant repeatedly drove his truck past the workstation while revving his engine. Then, on August 15, 2014, while Swope was at a carwash, Defendant pulled his truck up next to Swope's truck.

13

Although unclear how it occurred, Defendant caused his truck to blow a cloud of black diesel smoke onto Swope and Swope's truck.  Finally, on January 1, 2015, Phillips was driving south on Nogal Avenue in Capitan, New Mexico, when he observed Defendant, in the same truck, turn left onto Nogal Avenue.  Defendant accelerated, driving down the center of the street placing himself on a collision course with Phillips.  Defendant swerved out of the way, last minute, to avoid making contact with Phillips' truck.  Based on the foregoing, the United States presented, and the trial court admitted, evidence of Defendant's prior and subsequent conduct to show motive, intent, identity, or absence of mistake or accident for a proper purpose under Rule 404(b).

Next, the second factor—relevance—is satisfied because the 404(b) evidence is probative to demonstrate that it is more likely than not that Defendant:  (1) was driving the truck at the time of the incident; (2) made no mistake about the proximity and behavior of the vehicle; and (3) intended to utilize the truck to threaten or intimidate the officers.

Defendant, however, contends that the 404(b) evidence is irrelevant because the applicable question to determine relevancy is whether, at the time of the prior or subsequent acts, Defendant knew he was violating the federal regulation.  The Court is unpersuaded by Defendant's claim for two reasons.

First, Defendant failed to provide any authority in support of his assertion.  Second, it is well settled in the Tenth Circuit that prior and subsequent acts are admissible if the acts "share similarity with the charged crime" *United States v. Mares*, 441 F.3d 1152, 1157 (10th Cir. 2006).  "Similarity may be demonstrated through physical similarity of the acts or through the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic offense and charged offenses." *Id.*  The non-exclusive factors the Court may assess in

determining similarity include: "(1) whether the acts occurred closely in time; (2) geographical proximity; (3) whether the charged offense and the other acts share similar physical elements; and (4) whether the charged offense and the other acts are part of a common scheme." *Id.* at 1158 (internal citations omitted).

In this case, the trial court did not make a specific finding as to the similarity of the 404(b) extrinsic evidence and the offense. It is apparent, however, that the 404(b) evidence shares obvious similarities with the charged crime. For instance, as discussed *supra*, the charged crime and the other acts share a common scheme of Defendant utilizing his truck in a manner to intimidate or threaten the forest officers. In addition, all of the acts occurred within a short temporal proximity of the charged offense: prior acts occurred, at most, seventeen (17) months before; and the subsequent events occurred within seven (7) months after the charged crime. For these reasons, the Court finds that the 404(b) evidence was sufficiently similar to the charged crime and, hence, relevant.

Finally, the Court finds the third and fourth *Huddleston* factors do not apply in a bench trial. Notably, Defendant's appeal does not challenge the third factor—balancing the probative value of the evidence against its prejudicial effect under Fed. R. Evid. 403. More importantly, the Tenth Circuit has held that it is improper to exclude evidence under Rule 403 in a bench trial. *See United States v. Kienlen*, 349 Fed. Appx. 349, 351 (10th Cir. 2009). Similarly, the fourth factor, a limiting instruction, is unwarranted.

In sum, the Court finds that the trial court properly admitted the prior and subsequent acts under Fed. R. Evid. 404(b) and the extrinsic evidence was relevant to the crime charged. Accordingly, the trial court did not abuse its discretion.

*D. The Magistrate Judge Properly Excluded the Testimony of Sergeant Giron*

On appeal, Defendant proffers that Sergeant Giron's testimony would have applied NMSA 1978, § 66-7-339 (2015) (Pedestrians on Roadways) to the facts of this case. (Doc. 7) at 29. Additionally, Sergeant Giron would have provided an "opinion on whether the conduct complained of would constitute a violation of New Mexico road-use laws." *Id.* More specifically, Sergeant Giron's testimony would aid in "developing the self-inflicted-danger portion of his defense of the claim of intimidation." *Id.*

It is well established that the right of the accused to present a defense rests in the Fifth Amendment's guarantee of due process and the Sixth Amendment's Compulsory Process Clause. *Taylor v. Illinois*, 484 U.S. 400, 410 (1988); *Washington v. Texas*, 388 U.S. 14, 19 (1967). That right includes presenting relevant evidence. *United States v. Scheffer*, 523 U.S. 303, 308 (1998). The right to present a defense, however, is not limitless. *Id.* The right "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Rock v. Arkansas*, 483 U.S. 44, 55 (1987) (internal quotation omitted). Indeed, a trial court has broad discretion to determine "the order in which parties will adduce proof" and is reviewed only for abuse of discretion. *Geders v. United States*, 425 U.S. 80, 86 (1976). To an extent, the trial court "may refuse to allow cumulative, repetitive, or irrelevant testimony . . . ." *Id.* at 87. Relevant evidence may also be excluded if the probative value is substantially outweighed by undue delay or a waste of time. Fed. R. Evid. 403.

Here, the parties submitted extensive trial briefs to the court. In fact, Defendant's trial brief contains two pages discussing the application of Section 66-7-339 to the facts at hand. In the trial brief, Defendant maintains that the forest officers' violation of the statute was a "significant contributor" to any perceived threat or intimidation and, accordingly, Defendant cannot be found guilty for violating the federal regulation. Def.'s Resp. to U.S. Trial Br. at 14.

At trial, Magistrate Judge Lynch excluded Sergeant Giron's testimony on the basis that the court was aware of the relevant law.  Trial Tr. 96.

Undeniably, it is difficult for this Court to conceive how Sergeant Giron's testimony would assist the trial court.  Sergeant Giron was not offered as a fact witness.  Defendant offered his testimony for the sole purpose to enlighten the trial court on NMSA 1978, § 66-7-339.  The trial court, however, was well briefed on the New Mexico law prior to trial.  More importantly, as addressed above, contributory negligence does not apply in criminal law.  Hence, any liability on the forest officers for violation of NMSA 1978, § 66-7-339, does not negate Defendant's culpability.  Consequently, the Court finds Sergeant Giron's proffered testimony was highly irrelevant to the trial court's determination of whether Defendant violated 36 C.F.R. § 261.3(a).  The Court further finds, assuming *arguendo* that the testimony was relevant, any relevancy was substantially outweighed by the danger of undue delay and a waste of the court's time.  Thus, the trial court did not abuse its discretion in excluding Sergeant Giron's testimony.

   *E.  36 C.F.R. § 261.3(a) is Not Unconstitutionally Vague*

Defendant implicitly argues that 36 C.F.R. § 261.3(a) is vague because every peripheral activity could be construed as an "official duty."  (Doc. 7) at 22.  Defendant cites no authority finding the federal regulation to be unconstitutionally vague.  Furthermore, Defendant's brief suggests that he is challenging the regulation both on its face and as applied.

"[T]he void-for-vagueness doctrine requires that a [regulation] define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).  "The Supreme Court has told us (repeatedly) that the relevant question in void for vagueness challenges is merely whether the defendant

before us 'had fair notice from the language' of the law 'that the particular conduct which he engaged in was punishable.'" *United States v. Baldwin*, 745 F.3d 1027, 1031 (10th Cir. 2014) (quoting *Parker v. Levy*, 417 U.S. 733, 755 (1974)).  A facial challenge to a regulation on grounds of vagueness is appropriate only where the regulation "threatens to chill constitutionally protected conduct," or when the challenge is made prior to enforcement.  *United States v. Gaudreau*, 860 F.2d 357, 360–61.  On the other hand, if there is no claim of constitutionally protected conduct or the regulation has been applied to the challengers, then the regulation must be examined for vagueness as applied.  *Id.* at 361.

In this case, Defendant does not contend that his conduct was constitutionally protected, nor did he raise his challenge prior to enforcement of the regulation.  Thus, the Court finds that Defendant's facial challenge is fruitless.  Accordingly, the Court's analysis focuses on whether the term "official duty" gave Defendant fair notice that the conduct he engaged in was illegal.  As the Court noted earlier, it is well established that "official duty" means "when the officer is on duty and performing an act that contributes to the protection, improvement, or administration of the National Forest."  *Willfong*, 274 F.3d at 1300.  Although Defendant may speculate about the possible misinterpretations of the term, the meaning of the regulation is plain—a person is prohibited from threatening or intimidating a forest officer when the forest officer is performing an activity on behalf of the National Forest.  The Court will not invalidate the challenged regulation merely because Defendant can speculate different ways to apply the term.  Moreover, under the circumstances in this case, it is clear enough that Defendant knew that the forest officers—running as a group along their typical physical training route—were performing an activity on behalf of the National Forest.  Additionally, at a minimum, Defendant knew how close his conduct treaded to the line of threatening and intimidating the officers when he drove

his vehicle at an accelerated speed and in close proximity to the officers. *See Boyce Motor Lines v. United States*, 342 U.S. 337, 340 (1952) ("[N]o more than a reasonable degree of certainty" about the scope of a statute is required, "[n]or is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line."). Hence, the Court finds Defendant had fair notice from the language of 36 C.F.R. § 261.3(a) that the particular conduct in which he engaged was punishable. The Court, thus, concludes that 36 C.F.R. § 261.3(a) is constitutionally valid.

*IV.     Conclusion*

Viewing the record as a whole and the inference to be drawn therefrom in the light most favorable the United States, the Court finds that the evidence was sufficient for Magistrate Judge Lynch, as the trier of fact, to find Defendant violated 36 C.F.R. § 261.3(a), beyond a reasonable doubt. Moreover, the Court finds that Magistrate Judge Lynch did not abuse his discretion in admitting the 404(b) evidence, nor in excluding Sergeant Giron's testimony. Finally the Court finds that 36 C.F.R. § 261.3(a) is not unconstitutionally vague as applied to Defendant.

IT IS, THEREFORE, ORDERED that Defendant's Appeal from the United States Magistrate Judgment District of New Mexico (Doc. 7) is DENIED.

```
                                        _____
                                        UNITED STATES DISTRICT JUDGE
```